## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### (Atlanta Division)

**COLONY INSURANCE COMPANY,**

       Plaintiff,

  v.

**EMPIRE PARKING SERVICES, INC.,
JEAN F. ANDERSON, JASON
BARLOW, LUKE SMITH, and
REBEKAH BARR,**

      Defendants.

Case No. 1:22-CV-0967-SDG _____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Colony Insurance Company ("Colony") files this Complaint for Declaratory Judgment, and upon information and belief, states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Colony is a Virginia corporation with its principal place of business in Richmond, Virginia.

2. Defendant Empire Parking Services, Inc. ("EPS") is Georgia corporation with its principal place of business in Fulton County, Georgia.

3. Defendant Jean F. Anderson resides in Fulton County, Georgia, and is a citizen of the State of Georgia.

4.     Defendant Jason Barlow resides in Forsyth County, Georgia, and is a citizen of the State of Georgia.

5.     Defendant Luke Smith resides in Fulton County, Georgia, and is a citizen of the State of Georgia.

6.     Defendant Rebekah Barr resides in Fulton County, Georgia, and is a citizen of the State of Georgia.

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

8.     EPS tendered this matter to Colony and is seeking in excess of $75,000 in defense and indemnity from Colony in relation to the underlying lawsuits referenced herein.

9.     This is an action for a declaratory judgment, filed pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, *et seq*. An actual case and controversy of a justiciable nature exists between Plaintiff and Defendants, involving the rights, duties, and obligations, if any, of the parties under insurance policies issued by Colony to EPS.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(1) and (2), as Defendants reside and/or conduct business in this District and a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## THE POLICIES

### The Primary Policies

11.     Colony issued four primary policies to EPS for consecutive one-year policy periods from June 16, 2018 to June 16, 2022, as follows:

a.      Policy No. 103 GL 0024071-00 issued to EPS for the policy period of June 16, 2018 to June 16, 2019 (the "2018 Primary Policy");

b.      Policy No. 103 GL 0024071-01 issued to EPS for the policy period of June 16, 2019 to June 16, 2020 (the "2019 Primary Policy");

c.      Policy No. 103 GL 0024071-02 issued to EPS for the policy period of June 16, 2020 to June 16, 2021 (the "2020 Primary Policy"); and

d.      Policy No. 103 GL 0024071-03 issued to EPS for the policy period of June 16, 2021 to June 16, 2022 (the "2021 Primary Policy").

Copies of the 2018 Primary Policy, 2019 Primary Policy, 2020 Primary Policy, and 2021 Primary Policy (together, the "Primary Policies") are attached as **Exhibit A**, **Exhibit B**, **Exhibit C**, and **Exhibit D**, respectively.

12.     The Primary Policies each contain the same relevant terms for purposes of this action.

13.     Subject to all of their terms, conditions and limitations, each of the Primary Policies provide for $1 million each occurrence, $1 million personal and advertising injury, and $2 million aggregate limits of liability, subject to a $5,000 per occurrence deductible. *See* Primary Policies, Commercial General Liability Coverage Part ("CGL Coverage Part") Declarations, and Deductible Liability Insurance Endorsement.

14.     Coverage A – Bodily Injury and Property Damage provides specified coverage for those sums that EPS becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" where the "bodily injury" or "property damage" occurs during the policy period. *See* Primary Policies, CGL Coverage Part, Section I.A.1.(a).

15.     "Bodily injury" means "bodily injury, sickness or disease sustained by any person." *See* Primary Policies, CGL Coverage Part, Section V.3.

16.     "Property damage" means "physical injury to tangible property, including all resulting loss of use of that property," as well as "loss of use of tangible property that is not physically injured." *See* Primary Policies, Section V.17.

4

17. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Primary Policies, CGL Coverage Part, Section V.13.

18. Coverage A's insuring agreement also provides that:

> [t]his insurance applies to "bodily injury" and "property damage" only if . . . [p]rior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Primary Policies, CGL Coverage Part, Section I.A.1.b.(3).

19. Further, Coverage A's insuring agreement provides that "bodily injury" or "property damage" will be:

> deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
> (1) Reports all, or any part, of the "bodily injury" or "property damage" to [Colony] or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

5

Primary Policies, CGL Coverage Part, Section I.A.1.d.(1).

20.     Paragraph 1 of Section II – Who Is An Insured provides, in part, that EPS's "executive officers," directors, and stockholders are insureds in their capacity as such. *See* Primary Policies, CGL Coverage Part, Section II.1.d.

21.     Coverage A includes an exclusion for expected or intended injury, which provides that the insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured. *See* Primary Policies, CGL Coverage Part, Section 2.a.

22.     Coverage B – Personal and Advertising Injury Liability affords specified coverage for those sums that EPS becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies, where the "personal and advertising injury" is caused by an offense arising out of EPS's business that was committed during the policy period. *See* Primary Policies, CGL Coverage Part, Section I.B.1.

23.     "Personal and advertising" injury means, in relevant part, "injury … arising out of one or more of the following offenses: … a. False arrest, detention or imprisonment …." Primary Policies, CGL Coverage Part, Section V.14.

24.     Coverage B includes an exclusion that provides:

> This insurance does not apply to "personal and advertising injury" arising out of oral or written publication, in any manner,

6

of material whose first publication took place before the beginning of the policy period.

Primary Policies, CGL Coverage Part, Section I.B.2.c.

25. The Primary Policies also require as a condition precedent to coverage that:

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" ….

Primary Policies, CGL Coverage Part, Section IV.2.

**The Excess Policies**

26.     Colony issued four excess policies to EPS for consecutive one-year policy periods from June 16, 2018 to June 16, 2022, as follows:

        a.      Policy No. XS173436-00 issued to EPS for the policy period of June 16, 2018 to June 16, 2019 (the "2018 Excess Policy");

        b.      Policy No. XS173436-01 issued to EPS for the policy period of June 16, 2019 to June 16, 2020 (the "2019 Excess Policy");

        c.      Policy No. XS173436-02 issued to EPS for the policy period of June 16, 2020 to June 16, 2021 (the "2020 Excess Policy"); and

        d.      Policy No. XS173436-03 issued to EPS for the policy period of June 16, 2021 to June 16, 2022 (the "2021 Excess Policy").

Copies of the 2018 Excess Policy, 2019 Excess Policy, 2020 Excess Policy, and 2021 Excess Policy (together, the "Excess Policies") are attached as **Exhibit E**, **Exhibit F**, **Exhibit G**, and **Exhibit H**, respectively.

27.     The Excess Policies each contain the same relevant terms for purposes of this action.

28.     Subject to all of their terms, conditions and limitations, each of the Excess Policies provide for $5 million each occurrence and $5 million aggregate limits of liability, which apply only in excess of the underlying insurance, including

8

the Primary Policies. *See* Excess Policies, Declarations, Item 3, and Schedule of Underlying Insurance.

29.     Except as otherwise provided, the Excess Policies follow the same provisions, exclusions and limitations that are contained in the Primary Policies, and provide coverage no broader than that provided by the Primary Policies. *See* Excess Policies, Commercial Excess Liability Coverage Form ("Excess Coverage Form").

30.     Pursuant to the Pre-Existing Damage or Injury Exclusion, the Excess Policies do not apply to:

> (1) Any "injury or damage," whether such "injury or damage" is known or unknown:
>
>> a.  Which first occurred prior to the inception date of this policy …; or
>>
>> b.  Which is, or alleged to be, in the process of occurring at the inception date of the policy … even if the "event" continues during this policy period.
>
> (2) Any "injury or damage," whether known or unknown, which is in the process of settlement, adjustment or suit as of the inception date of this policy….
>
> "Injury or damage" which first occurs during this policy period includes any continuation, change or resumption of that "injury or damage" after the end of this policy period.

Excess Policies, Excess Coverage Form, Section I.2.g.

31.    "Injury or damage" means any injury or damage covered in the "applicable underlying insurance" arising from an "event." *See* Excess Policies, Excess Coverage Form, Section IV.5.

32.    "Event" includes an occurrence, offense, accident or act, to which the "applicable underlying insurance" applies. *See* Excess Policies, Excess Coverage Form, Section IV.4.

33.    "Applicable underlying insurance" means the policy or policies of "underlying insurance" which provide underlying coverage for loss that resulted in a claim under the Excess Policies. *See* Excess Policies, Excess Coverage Form, Section IV.1.

34.    "Underlying insurance" means any policy of insurance listed on the Schedule of Underlying Insurance, and includes the Primary Policies. *See* Excess Policies, Excess Coverage Form, Section IV.8, and Schedule of Underlying Insurance.

35.    The Excess Policies contain a Punitive, Exemplary or Multiple Damages Exclusion, pursuant to which the insurance does not apply to any claims for or awards of:  (1) punitive or exemplary damages; (2) multiple damages or any portion thereof; or (3) equitable or non-pecuniary relief; including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other

expenses associated with such awards. *See* Excess Policies, Exclusion – Punitive, Exemplary or Multiple Damages Endorsement.

36.   The Excess Policies also require as a condition precedent to coverage that:

a.   You must see to it that we are notified as soon as practicable of an "event", regardless of the amount, which may result in a claim under this insurance. To the extent possible, notice should include:

(1) How, when and where the "event" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any "injury or damage" arising out of the "event".

b.   If a claim is made or suit is brought against any insured, you must:

(1) Immediately record the specifics of the claim or suit and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

c.   You and any other insured involved must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit ….

Excess Policies, Excess Coverage Form, Section III.3.

## THE UNDERLYING ACTIONS AND CLAIM FOR COVERAGE

37.    Colony received a letter dated August 17, 2021 from counsel representing Ms. Anderson, Mr. Barlow, Mr. Smith, and Ms. Barr (collectively, the "Underlying Claimants").[1]

38.    The August 17, 2021 letter enclosed copies of the operative complaints in three actions that were initially filed before the inception of the 2018 Primary Policy and 2018 Excess Policy on June 16, 2018, seeking coverage for these matters (referred to together as the "Booting Actions") under the Primary and Excess Policies (collectively, the "Policies"), which include:

a.    *Anderson v. Empire Parking Services, Inc., et al.*, No. 17EV004040 (Ga. Cir. Ct., Fulton Cnty.) (the "*Anderson* Action"), a class action initially filed on August 23, 2017, concerning a booting incident that took place on February 3, 2017;

b.    *Barlow v. Empire Parking Services, Inc., et al.*, No. 18SC-0144-B (Ga. Cir. Ct. Forsyth Cnty.) (the "*Barlow* Action"), a class action initially filed on

---

[1] The August 17, 2021 letter was also sent on behalf of an additional claimant, Harold Blythe. Mr. Blythe's claims do not appear to be at issue at this time based on the most recent correspondence from counsel for the Underlying Claimants omitting the Blythe claim; however, similar coverage issues apply with respect to his claims as well.

February 22, 2018, concerning a booting incident that took place on October 14, 2017;

c.  *Smith and Barr v. Empire Parking Services, Inc., et al.*, No. 16EV005261 (Ga. Cir. Ct. Fulton Cnty.) (the "*Smith* Action"), a class action initially filed on November 14, 2016, concerning booting incidents that took place on October 24, 2016 for Mr. Smith and on February 27, 2015 for Ms. Barr.

A copy of the August 17, 2021 letter with enclosures is attached as **Exhibit I**.

39.    EPS did not tender the Booting Actions to Colony for coverage under the Policies, each of which were initially brought against EPS before the inception of the first policies issued by Colony to EPS.

40.    Rather, EPS—through an insured listed in Paragraph 1. of Section II – Who Is An Insured in the Primary Policies, or an "employee" authorized by EPS to give or receive notice of an "occurrence" or claim—received notice of the claims and provided notice of the Booting Actions to its prior insurers Ohio Security Insurance Company and The Ohio Casualty Insurance Company (together "Liberty"), and Liberty is providing EPS with a defense in the Booting Actions.

41.    The Underlying Claimants in each of the Booting Actions make substantially the same allegations that EPS has a systematic process of disabling vehicles with boots and similar devices without first complying with local

ordinances requiring certain signage at any location where vehicle immobilization occurs.

42.     The Underlying Claimants each allege that their vehicles were unlawfully booted by EPS because the signs displayed in the parking lots regarding booting did not comply with the applicable local ordinances.

43.     The Booting Actions assert causes of action for negligence, negligence *per se*, imputed negligence, premises liability, false imprisonment, conversion/civil theft, money had and received, and violation of the Georgia RICO statute.

44.     Further, the Booting Actions seek recovery of compensatory damages, punitive damages, statutory damages, including treble damages, and attorneys' fees.

45.     The Underlying Claimants in the Booting Actions have asserted that the total class-wide damages are more than $120 million and have demanded the full amount of all coverage available to EPS, including the $28 million limits of the Liberty primary and excess policies, to settle their class action claims.

46.     Colony has advised EPS and the Underlying Claimants that the Primary Policies do not afford coverage for the Booting Actions and now files this action to obtain a judicial declaration concerning the rights of the parties under the Policies.

14

<u>**COUNT I – REQUEST FOR DECLARATORY RELIEF**</u>
<u>**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE**</u>
<u>**LIABILITY DOES NOT APPLY TO THE BOOTING ACTIONS**</u>

47.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

48.     Coverage A – Bodily Injury and Property Damage Liability, provides specified coverage for those sums that EPS becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" where the "bodily injury" or "property damage" occurs during the policy period. *See* Primary Policies, CGL Coverage Part, Section I.A.1.(a).

49.     Coverage A's insuring agreement also provides that:

> [t]his insurance applies to "bodily injury" and "property damage" only if . . . [p]rior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Primary Policies, CGL Coverage Part, Section I.A.1.b.(3).

50.     Further, Coverage A's insuring agreement provides that "bodily injury" or "property damage" will be:

> deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
> (1) Reports all, or any part, of the "bodily injury" or "property damage" to [Colony] or any other insurer;
>
> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>
> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Primary Policies, CGL Coverage Part, Section I.A.1.d.(1).

51.     The Booting Actions do not allege any "bodily injury" or "property damage" as defined in the Primary Policies.

52.     To the extent that the Booting Actions allege any "property damage," Coverage A does not apply because (a) the alleged "property damage" occurred prior to the effective date of the 2018 Policy on June 16, 2018, (b) was known by EPS to have occurred prior to the effective date of the 2018 policy, and/or (c) is deemed to have been known by EPS prior to the inception of the 2018 Policy.

53.     Because the damages alleged in the Booting Actions do not fall within the scope of Coverage A in the Primary Policies, none of the Primary Policies affords coverage for these matters.

54.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under one or more of the Primary Policies.

## COUNT II – REQUEST FOR DECLARATORY RELIEF
## COVERAGE A – EXPECTED OR INTENDED INJURY EXCLUSION

55.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

56.     Pursuant to the Expected or Intended Injury Exclusion, coverage under the Primary Policies does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured. *See* Primary Policies, CGL Coverage Part, Section 2.a.

57.     The Booting Actions allege injury or damage that was expected or intended from the standpoint of EPS as part of its usual business of booting vehicles.

58.     As such, the Expected or Intended Injury Exclusion bars any coverage for the Booting Actions under Coverage A in the Primary Policies.

59.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Primary Policies.

## COUNT III – DECLARATORY JUDGMENT
## COVERAGE B – PRIOR PUBLICATION EXCLUSION

60.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

61.     Pursuant to the Prior Publication Exclusion, Coverage B does not apply to "personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period. *See* Primary Policies, CGL Coverage Part, Section I.B.2.c.

62.     The signs at issue in the Booting Actions that the Underlying Claimant contend failed to comply with local ordinances, allegedly rendering EPS's booting of the Underlying Claimants' vehicles unlawful, were first published prior to June 16, 2018.

63.     To the extent that the Booting Actions allege "personal and advertising injury," such purported injury arises out of written publication of material that was first published before the beginning of the policy period of the 2018 Primary Policy.

64.     Therefore, the Prior Publication Exclusion applies to bar any coverage for the Booting Actions under Coverage B in the Primary Policies.

65.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Primary Policies.

## COUNT IV – DECLARATORY JUDGMENT
## THE EXCESS POLICIES AFFORD NO COVERAGE
## FOR THE BOOTING ACTIONS

66.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

67.     The Excess Policies follow the same provisions, exclusions and limitations that are contained in the Primary Policies as relevant to this action and addressed in the preceding counts, and provide coverage no broader than that provided by the Primary Policies.

68.     Further, coverage under the Excess Policies applies only in excess of the underlying insurance, including the Primary Policies.

69.     Because the Primary Policies afford no coverage for the Booting Actions, and because the limits of the underlying insurance have not been exhausted, the Excess Policies also afford no coverage for these matters.

70.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Policies.

## COUNT V – DECLARATORY JUDGMENT
## EXCESS POLICIES – PRE-EXISTING INJURY
## OR DAMAGE EXCLUSION

71.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

19

72.     Pursuant to the Pre-Existing Damage or Injury Exclusion, the Excess Policies do not apply to:

> (1) Any "injury or damage," whether such "injury or damage" is known or unknown:
>
> > a.  Which first occurred prior to the inception date of this policy …; or
> >
> > b.  Which is, or alleged to be, in the process of occurring at the inception date of the policy … even if the "event" continues during this policy period.
>
> (2) Any "injury or damage," whether known or unknown, which is in the process of settlement, adjustment or suit as of the inception date of this policy….
>
> "Injury or damage" which first occurs during this policy period includes any continuation, change or resumption of that "injury or damage" after the end of this policy period.

*See* Excess Policies, Excess Coverage Form, Section I.2.g.

73.     To the extent that the Booting Actions allege any "injury or damage," any such "injury or damage" (a) first occurred prior to the inception date of the 2018 Excess Policy, (b) was alleged to be in the process of occurring at the inception date of the 2018 Excess Policy, (c) or was in the process of suit at the inception of the 2018 Excess Policy.

74.     Therefore, the Pre-Existing Damage or Injury Exclusion bars any coverage for the Booting Actions under the Excess Policies.

75.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Excess Policies.

## COUNT VI – DECLARATORY JUDGMENT
## PUNITIVE, EXEMPLARY OR MULTIPLE DAMAGES EXCSLUION

76.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

77.     Pursuant to the Punitive, Exemplary or Multiple Damages Exclusion in the Excess Policies, coverage does not apply to any claims for or awards of: (1) punitive or exemplary damages; (2) multiple damages or any portion thereof; or (3) equitable or non-pecuniary relief; including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards. *See* Excess Policies, Exclusion – Punitive, Exemplary or Multiple Damages Endorsement.

78.     The Excess Policies therefore afford no coverage for the Booting Actions to the extent that they seek recovery of punitive or exemplary damages, multiple damages, or other amounts excluded under the Punitive, Exemplary or Multiple Damages Exclusion.

79.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Excess Policies.

21

## COUNT VII – DECLARATORY JUDGMENT
## LATE NOTICE

80.     Colony incorporates by reference paragraphs 1-46 as if fully set forth herein.

81.     As a condition precedent to coverage, the Primary and Excess Policies require that EPS notify Colony as soon as practicable of any suit brought against it and immediately send copies of any demands, summonses or legal papers received in connection with the suit.

82.     EPS failed to provide timely notice of the Booting Actions to Colony.

83.     EPS failure to provide timely notice was a material breach of the various policies' notice provisions.

84.     Colony was severely prejudiced as a result of EPS' failure to provide timely notice.

85.     Because of the failure to provide notice as prescribed in the Primary Policies and the Excess Policies, there is no coverage available for the Booting Actions.

86.     Defendants dispute Colony's position and contend that Colony owes coverage in connection with the Booting Actions under the Policies.

WHEREFORE, Colony Insurance Company respectfully moves this Court for entry of Declaratory Judgment in its favor as follows:

a)  Declaring that Coverage A in the Primary Policies does not apply to the Booting Actions;

b)  Declaring that the Expected or Intended Injury Exclusion bars any coverage for the Booting Actions under Coverage A of the Primary Policies;

c)  Declaring that the Prior Publication Exclusion bars any coverage for the Booting Actions under Coverage B of the Primary Policies;

d)  Declaring that the Excess Policies afford no coverage for the Booting Actions because the limits of the underlying insurance have not been exhausted and pursuant to the terms of the Primary Policies to which the Excess Policies follow form;

e)  Declaring that the Excess Policies afford no coverage for the Booting Actions pursuant to the Pre-Existing Damage or Injury Exclusion;

f)  Declaring that the Excess Policies afford no coverage for the Booting Actions to the extent that they seek recovery of punitive or exemplary damages, multiple damages, or other amounts excluded under the Punitive, Exemplary or Multiple Damages Exclusion;

g)  Declaring that as a result of EPS's failure to provide notice of the Booting Actions to Colony as prescribed in the Primary Policies and the Excess Policies, there is no coverage available under the Policies;

h)  Declaring that Colony owes no duty to defend or indemnify EPS or any other party under the Primary and Excess Policies in connection with the Booting Actions; and

i)  Awarding such further relief as the Court may deem appropriate.

Dated:  March 8, 2022

ROBERTS TATE LLC

/s/ Parker J. Lavin
Parker J. Lavin
Georgia Bar No. 834623
plavin@robertstate.com.com
Lena Mirilovic
Georgia Bar No. 248218
lmirilovic@robertstate.com.com

Attorneys for Plaintiff
Colony Insurance Company

2487 Demere Road, Suite 400
St. Simons Island, GA 31522
912.638.5200 (telephone)
912.638.5300 (facsimile)